Date signed September 17, 2009



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| LEE ANDREW THOMPSON | : | Case No. 08-25496PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| SONDRA THOMPSON | : | |
|   t/u/o OLD REPUBLIC NATIONAL | : | |
|   TITLE INSURANCE COMPANY | : | |
| | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 09-0099PM |
| | : | |
| LEE ANDREW THOMPSON | : | |
| | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**MEMORANDUM OF DECISION**

This case came before the court for a hearing on the Motion for Summary Judgment filed by the Plaintiff, Old Republic National Title Insurance Company as assignee of Sondra Thompson ("Plaintiff" and/or "Old Republic"). Plaintiff filed a Complaint entitled Objection to Discharge wherein it alleges that under §§ 523(a)(2), (a)(4), (a)(7) [presumably (a)(6)], and (a)(15) that a judgment entered in its favor by the Circuit Court for Prince Georges County, Maryland, in the sum of $62,500.00 on July 14, 2008, is not dischargeable (Exhibit X). Debtor filed an opposition to the Motion and appeared at the argument, but did not file an opposing affidavit.

This case grows out of an action for divorce filed by the Debtor against his former wife, Sondra Thompson. A Judgment of Absolute Divorce was entered by the Circuit Court for Prince Georges County, Maryland, on August 20, 2004, that provided for the custody and support of their minor child and incorporated their agreement for resolution of issues of real and personal property. This adversary proceeding involves the disposition of their marital home that was titled solely in Debtor's name, as to which the order provided (Exhibit C):

> ORDERED, that the following agreement of the parties respecting a resolution of real and personal property issues, and any monetary award, be and the same is hereby ratified and approved by the Court and it is so ordered:
>
> 1. The parties agree to immediately list the marital home located at 4708 Tamworth Court, Temple Hills, Maryland on the market for sale with a mutually agreed upon realtor, at a price recommended by the realtor. Until such time as this property is sold, the Plaintiff shall be solely responsible for the payment of any and all mortgages or other liens or other obligations associated with this property, and the Plaintiff shall indemnify and hold the Defendant harmless from any obligations thereon. The Defendant shall be fully authorized by the Plaintiff to be involved in the listing, marketing and sale of this property, regardless of the fact that her name is not on the Deed to this property, and the Defendant shall be authorized to receive all information from the realtor, title agent or settlement attorney concerning the sale and settlement of this property. The Defendant shall receive 75% of the net proceeds from the sale of this property, and the Plaintiff shall receive 25% of the net proceeds, with net proceeds defined as the sales price less costs of sale and payment of the first and second mortgages only encumbering this property, and Defendant shall receive her 75% proceeds directly from the settlement, and the Plaintiff hereby authorizes the settlement attorney to issue a check payable to the Defendant for her portion of the sales proceeds. The Defendant shall vacate this property on or before August 31st, 2004. Should either party fail to cooperate in the sale and settlement of this property, the parties authorize the appointment of a Trustee by this Court to secure the sale and settlement, with the breaching party to be responsible for all costs of this Trustee.

The property was not sold pursuant to that order, and the Debtor dragged his heels in listing the property and going forward with its sale, as demonstrated by Exhibits D and E. Furthermore, Debtor refinanced the property and withdrew $52,927.06 from the equity in the property as a result of the refinancing (Exhibit F). While nothing in the divorce decree specifically prohibited this action, it was clearly contrary to the spirit of the decree in that it reduced the Debtor's ex-wife's expectation of 75% of the resulting net proceeds from the sale of the property.

As a result of the refinancing and Debtor's recalcitrance in selling the property, Debtor's ex-wife filed a Motion to hold Debtor in contempt. That action resulted in a Consent Order

(Exhibit H), whereby the parties agreed to list the property with Diane Franklin of REMAX Realtors. Debtor agreed to fully cooperate with the agent to show the property, to keep his wife informed of his progress and not to damage the property. The agreement further provided that Debtor's ex-wife would receive 100% of the net proceeds of the property, not to exceed $62,500.00. The Consent Order contained Debtor's certification that there were no liens other than a first mortgage of approximately $241,000.00. Subsequently, the Debtor, acting without the knowledge of his ex-wife, sold the property to one Evette L. Contee for $280,000.00 (Exhibit O). At the time of the closing of the sale of the property on December 6, 2006, the property was subject to a secured loan of $244,611.76.

Subsequently, Sondra Thompson filed an action in the Circuit Court for Prince George's County, Maryland, Case No. CAE0708403, against the Debtor, Evette Contee, Raymond Contee who was the sales person handling the transaction, Geoplex LLC, the listing broker, Statewide Real Estate Discounters LLC, and GMAC Mortgage Corporation of Iowa, as assignee of Central Mortgage Company, alleging that the Debtor improperly sold the former marital home at 4708 Tamworth Court, Temple Hills, Maryland, to Mrs. Contee in contravention of the Consent Order that disposed of the contempt action (Exhibit H). In the course of that litigation, Old Republic National Title Insurance Company, through Mrs. Contee, paid Sondra Thompson $25,000.00, in exchange for which she released all defendants other than the Debtor and assigned all her right and claim against her ex-husband to Old Republic with respect to her claims against her former husband based on the alleged unlawful sale. She agreed to cooperate with Old Republic in the prosecution of its action against the Debtor.

Old Republic thereupon "cleaned up" the record and filed a Third Amended Complaint under the name of Sondra Thompson t/u/o Old Republic National Title Insurance Company reciting the original court decree and the subsequent Consent Order and various other misdeeds of the Debtor.[1] The Complaint alleged that, in derogation of his legal obligations, Debtor signed a contract (Exhibit L dated December 8, 2006) to sell the property to Evette Contee for $280,000.00 and that he had done so without the required approval or consent of a listing

---

[1] While the Third Amended Complaint filed in the Circuit Court and the pleadings in this adversary proceeding label this action as filed "to the use of Sondra Thompson," that is not the fact. She has no further interest in the outcome of this case. A use plaintiff is an entity, often a bonding company, that brings suit in the name of its principal. Unlike this case, the surety and principal's interests are identical in that the principal's debt to the bonding company is reduced by any recovery, and any recovery in excess of the subrogee's interest belongs to the principal.

agreement for the sale of the property. The Third Amended Complaint was pleaded in five counts - Count I for breach of the agreement contained in the Consent Order; Count II on account of Debtor's failure to act in good faith and deal fairly with his ex-wife; Count III in breach of the agreement and for damages for his failure to supply all information concerning the sale; Count IV for deception and failing to inform his former spouse of his actions concerning the property; and Count V for breach of a fiduciary relationship.

The Third Amended Complaint came before the Circuit Court for trial on July 14, 2008. Debtor did not appear at the trial, although he had filed an answer to the Complaint and appeared at depositions. The trial went forward without the presence of the Debtor and the court heard four witnesses, after which it rendered the following opinion (Exhibit A):

> THE COURT: All right. Very well. I am satisfied that credible evidence presented, that the parties were married and during the divorce proceeding, it was determined by the court that plaintiff would be entitled to a certain percentage of the proceeds of the sale of the marital home. That the defendant initially was to have consulted with and had a listing. At the time of closing, plaintiff was to receive her share of the funds. That the property was listed. It did not go to closing. Apparently, the defendant unilaterally canceled that agreement, refinanced the property, got some money out of it, and proceeds of which the plaintiff has never seen.
>
> Subsequently, a contempt of court was filed in the domestic case. The parties reached an agreement whereby it was agreed, based on the appraisal, that plaintiff would receive $62,500 from the proceeds of the sale of the home. That, it was also agreed that the property would be listed with an agent within 30 days. Apparently, that was done. However, again, defendant, on his own and without any prior notice or consent to plaintiff, entered in to an agreement with a different realtor, ultimately sold the property for less than what was anticipated during the settlement negotiations on the, on the contempt hearing. And clearly, by consent order, it was determined that plaintiff would receive $62,500 from the sale of the home. And certainly, the defendant's actions were contrary to what the parties had agreed to.
>
> And it is very clear to me that the plaintiff had no knowledge of any of this activities or actions that were taken. And so the Court is going to enter judgment in favor of the plaintiff against the defendant in the amount of $62,500.

The court finds that, by virtue of the doctrine of collateral estoppel, the Debtor is foreclosed from relitigating the amount of the claim of Plaintiff. Collateral estoppel applies because the issues involved are identical to the issues which have been determined and

necessarily decided.  Plaintiff has established the five elements required: (1) the issue precluded must be identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) the determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be valid and final; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.  *Ramsay v. U.S. Immigration & Naturalization Service*, 14 F.3d 206, 210 (CA4 1994).  Debtor had a full and fair opportunity to defend the case.  The court has considered his motion for a new trial in the state court case that was denied by the trial judge without a hearing in that no grounds were stated supporting the motion.  Debtor urges in his opposition to the Motion for Summary Judgment that he was told by a co-defendant that the case had been settled.  Even if that statement were under oath, it has no materiality here.  The state court ruled as it did and, if Debtor was dissatisfied with the ruling, nothing prevented his taking an appeal from that ruling.  As in the cases of *Nestorio v. Associates Commercial Corp.,* 250  B.R. 50, 55-57 (D Md. 2000), and *In re Bernstein,* 197 B.R. 475 (B.C. Md. 1996), his failure to appear does not affect the application of the doctrine of collateral estoppel with respect to the amount of the claim against Debtor, should Plaintiff prevail in this action.

After consideration of the arguments of the parties and the undisputed facts contained in the record, the court will deny the Plaintiff summary judgment under § 523(a)(15) of the Bankruptcy Code as well as the claims for relief under §§ 523(a)(2) and (4) of the Bankruptcy Code, and the court will deny the motion for summary judgment based upon § 523(a)(6) of the Bankruptcy Code leaving that count for trial.  It should be noted further that the trial court denied the Plaintiff's prayer for punitive damages in the Third Amended Complaint.  Under Maryland law, punitive damages seek to punish a party "whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability."  *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 649 (Md. 1992).  Without
an allowance of punitive damages, the Circuit Court judgment does not provide a basis for the court to find willful and malicious action on the part of the Debtor without further evidence.

Section 523(a)(2)(A) of the Bankruptcy Code provides:

**11 U.S.C. § 523.  Exceptions to discharge**

>(a) A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
>\*         \*         \*         \*
>
>(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--
>
>>(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Maryland law provides:

>In order to recover damages in an action for fraud or deceit, a plaintiff must prove (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S&R, Inc., t/a VOB Auto Sales*, 639 A.2d 660, 668-69 (Md. 1994).  Whatever Defendant's many misdeeds may have been, they did not involve a false representation of a material fact, only broken promises of future action.  Indeed, the Third Amended Complaint speaks of an absence of disclosure. There is no allegation of a false depiction of current or past facts.  *In re Shipe,* 41 B.R. 584, 586 (BC Md. 1984).

Section 523(a)(4) of the Bankruptcy Code provides:

**11 U.S.C. § 523,  Exceptions to discharge**

>(a) A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
>\*         \*         \*         \*
>
>(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Here the Complaint fails as well. There was no pre-existing trust to create a fiduciary relationship between the Debtor and his former spouse.  A debt is nondischargeable as a result of defalcation where plaintiff establishes (1) a fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss.  *In re Bucci*, 493 F.3d 635, 642 (CA6 2007).  Section 523 of the Bankruptcy Code covers only "express" or technical trusts and not trusts arising out of "the very act of wrongdoing.... [The Debtor] must be a trustee before the wrong and without reference

thereto." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934). *See also, In re Patel*, 565 F.3d 963 (CA6 2009); *In re Blaszak*, 397 F.3d 386, 391 (CA6 2005). None of the documents relied on by the Plaintiff support as much as an inference of the existence of an express or technical trust. There was no fiduciary relationship existing between the Thompsons following the divorce.

>11 U.S.C. § 523(a)(15) provides:
>
>**11 U.S.C. § 523,  Exceptions to discharge**
>
>>(a) A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt--
>>          \*                    \*                    \*                    \*
>>(15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

Unlike the provisions of the other sections relied upon by the Plaintiff, this section's beneficiaries, as with 11 U.S.C. § 523(a)(5), are limited to a spouse, former spouse or child of the debtor. Nothing could be plainer from the statute. Section 523 begins with the phrase that "a discharge under section 727 . . . does not discharge an individual debtor from any debt--" but the beneficiaries of this section are limited in (a)(5) by virtue of the definition of Domestic Support Obligation found at 11 U.S.C. § 101(14A) and in (a)(15) by the terms of the statute. As the legislative history mandates:

>Sec. 215. *Nondischargeability of Certain Debtors for Alimony, Maintenance, and Support*. Section 215 of the Act amends Bankruptcy Code section 523(a)(5) to provide that a "domestic support obligation" (as defined in section 211 of the Act) is nondischargeable and eliminates Bankruptcy Code section 523(a)(18). Section 215(2) amends Bankruptcy Code section 523(c) to delete the reference to section 523(a)(15) in that provision. Section 215(3) amends section 523(a)(15) to provide that obligations to a spouse, former spouse, or a child of the debtor (not otherwise described in section 523(a)(5)) incurred in connection with a divorce or separation or related action are nondischargeable irrespective of the debtor's inability to pay such debts.

H.R. Rep. No. 109-31, Pt. 1 (2005). The Plain Meaning rule requires that assignees, like attorneys, are excluded from protection accorded members of the immediate family. *Cf. In re*

*Brooks*, 371 B.R. 761, 765 (B.C. N.D. Tex. 2007) ("Congress intended in Section 523(a)(5) to ensure the support of a debtor's family, not to turn a debtor's family members into debt recovery associates.").

The court has considered all of the material submitted by the Plaintiff and finds that there is no basis for it to prevail under §§ 523(a)(2), (a)(4) or (a)(15) of the Bankruptcy Code. That being the case, the court will enter summary judgment in favor of the party opposing the Motion, even though no formal cross-motion was filed. *See National Expositions, Inc., v. Crowley Maritime Corp.*, 824 F.2d 131, 133 (CA1 1987), *Clark v. U.S.*, 630 F.Supp. 101 (D. Md. 1986), 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 at 346-347 (3d ed. 1998).

On the other hand nothing in 11 U.S.C. § 523(a)(6) contains a similar limitation. *Cf. In re Boyajian,* 367 B.R. 138, 145-146 (B.A.P. 9th Cir. 2007). That section provides:

> **11 U.S.C. § 523, Exceptions to discharge**
>
> (a) A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt--
> \*          \*          \*          \*
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The Supreme Court has established guidelines for determining whether a debt arises from a willful and malicious injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 59 (1998) (holding that Section 523(a)(6) does not except from discharge debts arising from negligently or recklessly inflicted injuries); *see also St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009 (CA4 1985) (noting that in the context of § 523(a)(6), "willful" means "deliberate or intentional"). In *Kawaauhau*, the Court concluded that for a debt to be nondischargeable under § 523(a)(6), the debtor must have actually intended to cause injury, not merely an act that resulted in an injury. The test, then, is whether the debtor acted with "substantial certainty [that] harm [would result] or subjective motive to cause harm." *In re Miller*, 156 F.3d 598, 604 (CA5 1998). What Plaintiff has established is that the property was sold at a price that produced slightly more than $5,000.00 for its assignor. The court cannot find that the record as it exists enables the granting of summary judgment for the Plaintiff, nor that the funds that were drawn out as a result of the refinancing were drawn out to injure the Plaintiff's assignor and not for the personal benefit of the Debtor. Similarly, based on the record, the court cannot find at this stage

of the proceedings that the sale of the property was likewise based upon an intent to maliciously injure his former spouse. The court believes this is an issue of fact that requires testimony of the parties involved. Accordingly, the court finds this issue of fact sufficient to cause the denial of the Motion.

An appropriate order will be entered.

cc:
Young S. Song, Esq., 6301 Ivy Lane, Suite 419, Greenbelt, MD 20770
Robert D. Lourie, Esq., 2007 Tidewater Colony Drive, Suite 2B, Annapolis, MD 21401
Darryl Armfield Kelley, Esq., 6944 Allentown Road, Camp Springs, MD 20748
Lee Andrew Thompson, 9706 Underwood Drive, Fort Washington, MD 20744

**End of Memorandum**